AURORA ACEVEDO RAMOS ET ALS., demandantes y recurrentes, *v.* MUNICIPIO DE AGUADILLA, demandado y recurrido.

*Número:* CC-2000-377 *Resuelto:* 11 de abril de 2001

*Israel Roldán González,* abogado de la parte demandante y recurrente; *Lourdes T. Pagán,* abogada de la parte demandada y recurrida.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

La parte demandante recurrente se compone de un grupo de cincuenta y siete (57) empleados *de carrera* del Municipio de Aguadilla que el Alcalde Carlos Méndez Martínez cesanteó. Dichos empleados recibieron las cartas de despido entre el 3 y el 9 de julio de *1997*.

El 31 de julio *del mismo año*, los empleados cesanteados apelaron ante la Junta de Apelaciones del Sistema de Administración de Personal (en adelante JASAP). Alegaron que, teniendo más antigüedad en sus empleos que otros que permanecieron en sus puestos, fueron objeto de despido indebido, en violación al debido proceso de ley; que tenían derechos adquiridos como empleados públicos y, en vista a ello, solicitaron de JASAP que declarase ilegales y nulas las cesantías y ordenara su reinstalación a sus antiguos puestos. El Municipio, en su "contestación", alegó que los empleados fueron cesanteados legalmente ya que éstos tuvieron que ser terminados en sus empleos conforme un "plan de cesantía" aprobado por razón del cierre de unos centros de diagnósticos.

El 10 de junio de *1998*, los mencionados ex empleados del Municipio radicaron demanda, *por daños y perjuicios*, contra el Municipio ante el Tribunal de Primera Instancia, Sala Superior de Aguadilla. En la demanda, hicieron básicamente las mismas alegaciones que habían hecho en el recurso de apelación ante JASAP,(1) *añadiendo* que, debido a lo alegado, el Municipio les causó daños, sufrimientos y angustias mentales, los cuales valoraron en cincuenta mil dólares ($50,000) por cada demandante.

El 3 de julio de 1998, los empleados cesanteados solicitaron de JASAP que, en pro de la economía procesal, les permitiera desistir, *sin* perjuicio, de la reclamación incoada

---

(1) La demanda señalaba que las cesantías eran nulas por violar el debido proceso de ley y por no tomar en cuenta la eficiencia de los empleados ni el tiempo de servicio de éstos. Reclamaron la reinstalación a sus puestos al igual que todos los salarios y beneficios dejados de percibir.

ante dicha agencia, ello, con el propósito de evitar que dos (2) foros considerasen la misma reclamación. El Municipio se opuso a dicha solicitud señalando que el Reglamento Procesal de JASAP establece que todo desistimiento de una acción es *con* perjuicio.

JASAP le concedió cinco (5) días laborables a los entonces apelantes para que informaran ante qué foro interesaban continuar litigando su reclamación. En la orden que a esos efectos emitiera la referida agencia, se hizo constar, en lo pertinente, que:

> Por tanto, se le concede a la parte apelante un término de cinco (5) días laborables contados a partir del archivo en autos de la presente Orden para la Secretaría de JASAP, para que decida, en qu[é] Foro desea continuar litigando. No puede la parte apelante litigar los mismos hechos ante dos (2) Foros distintos simultáneamente. Dicha situación, además, de una p[é]rdida de recursos podría dar lugar, a decisiones contradictorias, entre ambos Foros. Así mismo, una determinación del Tribunal de Primera Instancia, Sala Superior, sobre los mismos hechos en controversia, constituiría cosa juzgada para JASAP. *Exhibit* 12, pág. 63.

Los empleados cesanteados *informaron* que interesaban continuar litigando su causa de acción ante el foro judicial. Mediante Resolución de 14 de agosto de 1998, JASAP archivó *con* perjuicio la apelación instada ante dicha agencia.

El 14 de diciembre de 1998, el Municipio solicitó del tribunal la *desestimación de la demanda* arguyendo que el tribunal carecía de jurisdicción para entender en la controversia ya que la parte demandante *no* le había notificado su reclamo por daños al alcalde, dentro de los noventa (90) días siguientes a la fecha en que conocieron de la causa de acción, así como que éstos *no* habían agotado los remedios administrativos.

Luego de escuchar la posición de las partes, el Tribunal de Primera Instancia *desestimó* la acción mediante Sentencia de 14 de octubre de 1999. En la misma, el tribunal determinó que los demandantes habían incumplido con el

requisito de notificar su reclamación al alcalde y de agotar los remedios administrativos; posteriormente, el foro de instancia denegó una moción sobre determinaciones de hechos adicionales que, a tenor con la Regla 43.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, había presentado la parte demandante.

El 29 de diciembre de 1999, los demandantes *apelaron* ante el Tribunal de Circuito de Apelaciones *señalando que el tribunal de instancia había errado*: (1) al determinar que la parte demandante *no* notificó al Municipio de la acción de daños, y (2) al resolver que la parte demandante venía obligada a agotar la vía administrativa. El Municipio se opuso al recurso presentado.

Mediante *resolución* emitida el 14 de marzo de 2000, el Tribunal de Circuito de Apelaciones *confirmó* la sentencia apelada al determinar que la parte apelante incumplió con el requisito jurisdiccional de notificar al alcalde de su reclamación por daños, resolviendo que la apelación ante JASAP *no* constituyó la notificación requerida por ley.

Inconformes con la resolución del Tribunal Apelativo, los demandantes peticionarios comparecieron ante este Tribunal, mediante *certiorari* presentado el 25 de abril de 2000, señalando que el foro apelativo intermedio había errado:

> ... al concluir que la parte demandante-recurrente no notificaron [sic] al Municipio sobre su causa de acción en daños dentro del término de 90 días dispuesto por ley.
> ... al confirmar la desestimación efectuada por el Tribunal de Instancia aún cuando de la faz de la demanda original y de la demanda enmendada surge una causa de acción por despido ilegal la cual no está sujeta al término de 90 días invocado por el Municipio.
> ... al no concluir que la causa de acción incoada por la parte demandante-recurrente relacionada a la violación del Derecho a un Debido Proceso de Ley de éstos por la parte del Municipio no requería el agotamiento del trámite administrativo. *Certiorari*, pág. 4.

*Expedimos* el auto solicitado. Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

## I

Los peticionarios alegan que cumplieron con el requisito de notificar al Municipio, dentro de los noventa (90) días siguientes a la fecha en que el reclamante conoció de la causa de acción, en cumplimiento con el Art. 15.003 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (en adelante Ley de Municipios Autónomos de Puerto Rico), Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. sec. 4703), al haber ellos apelado ante JASAP. Sostienen que dicha apelación, al contener esencialmente las mismas reclamaciones que luego se pautaron en la demanda, tuvo el efecto de notificar o avisar al Municipio y a su alcalde de la reclamación del demandante; hecho que hacía innecesaria la notificación específica contemplada en el referido estatuto.

El Art. 15.003 de la Ley de Municipios Autónomos de Puerto Rico, *ante*, en lo pertinente dispone:

> Toda persona que tenga reclamaciones de cualquier clase contra un municipio por daños personales o a la propiedad, ocasionados por la culpa o negligencia del municipio, *deberá presentar al Alcalde una notificación escrita, haciendo constar en forma clara·y concisa la fecha, lugar, causa y naturaleza general del daño sufrido. En dicha notificación se especificará, además, la cuantía de la compensación monetaria o el tipo de remedio adecuado al daño sufrido, los nombres y direcciones de sus testigos y la dirección del reclamante, y en los casos de daño a la persona, el lugar donde recibió tratamiento médico en primera instancia.*
>
> (a) *Forma de entrega y término para hacer la notificación.*— Dicha notificación se entregará al Alcalde, remitiéndola por correo certificado o por diligenciamiento personal o en cualquier otra forma fehaciente reconocida en derecho.
>
> La referida notificación escrita deberá presentarse al Alcalde dentro de los noventa (90) días siguientes a la fecha en que el

reclamante tuvo conocimiento de los daños reclamados. Si el reclamante está mental o físicamente imposibilitado para hacer dicha notificación en el término antes establecido, no quedará sujeto al cumplimiento del mismo, debiendo hacer la referida notificación dentro de los treinta (30) días siguientes a la fecha en que cese la incapacidad.

. . . . . . . . . .

(b) *Requisito jurisdiccional*—No podrá iniciarse acción judicial de clase alguna contra un municipio por daños causados por la culpa o negligencia de aquél, a menos que se haga la notificación escrita, en la forma, manera y en los plazos dispuestos en este título. (Énfasis suplido.)

La Ley de Municipios Autónomos de Puerto Rico, de 1991, *ante*, sustituyó la Ley Orgánica de los Municipios, de 1980, la cual a su vez derogó a la Ley Municipal de 1960. Esta última fue la que por primera vez estableció el requisito de notificación al Ejecutivo Municipal, previo la iniciación judicial de cualquier reclamación por daños personales o a la propiedad causados por culpa o negligencia de la entidad municipal.

■ Asimismo, la Ley de Reclamaciones y Demandas contra el Estado se adoptó en 1955,[2] pero no fue hasta el año 1966 que mediante la Ley Núm. 121 de 24 de junio de 1966 (32 L.P.R.A. secs. 3077 y 3077 n.) se enmendó para añadirle el requisito de notificación previa al Estado en casos de demandas.

La jurisprudencia interpretativa de estas dos leyes, las cuales establecen el requisito de notificación previa en demandas contra el Estado o los municipios, *ha sido abundante.*

■ La *norma general* es que el requisito de notificación debe ser aplicado, de manera rigurosa, en acciones contra el Estado o los municipios por daños ocasionados por la culpa o negligencia de éstos. *López v. Autoridad de*

---

[2] Ley Núm. 104 de 29 de junio de 1955 (32 L.P.R.A. sec. 3077 *et seq.*; 31 L.P.R.A. sec. 5142).

*Carreteras*, 133 D.P.R. 243 (1993); *E.L.A. v. Tribunal Superior*, 104 D.P.R. 160 (1975); *Ortiz v. Gobierno Municipal de Ponce*, 94 D.P.R. 472 (1967); *Mangual v. Tribunal Superior*, 88 D.P.R. 491 (1963).

Debe mantenerse presente, *sin embargo*, que el mencionado requisito *no* alcanza calidad de condición de precedente jurisdiccional *y que se han permitido excepciones en circunstancias donde el esquema legislativo carece de virtualidad, propósito u objetivo y donde jurídicamente no hay razón para aplicarlo.* Véanse: *Romero Arroyo v. E.L.A.*, 127 D.P.R. 724 (1991); *Passalacqua v. Mun. de San Juan*, 116 D.P.R. 618 (1985); *Meléndez Gutiérrez v. E.L.A.*, 113 D.P.R. 383 (1982); *Figueroa v. E.L.A.*, 113 D.P.R. 327 (1982); *Rivera Vicenti v. E.L.A.*, 106 D.P.R. 357 (1977); *Rivera Rivera v. Trinidad*, 100 D.P.R. 776 (1972); *Díaz v. Municipio de Cayey*, 99 D.P.R. 196 (1970); *Insurance Co. of P.R. v. Ruiz*, 96 D.P.R. 175 (1968); *Rosario Quiñones v. Municipio de Ponce*, 92 D.P.R. 586 (1965); *García v. Northern Assurance Co.*, 92 D.P.R. 245 (1965).

■ El requisito de notificación responde a unos *fines públicos específicos* de proteger a los municipios de acciones ajenas a su conocimiento. En reiteradas ocasiones, hemos identificado los siguientes propósitos:

> 1—proporcionar a estos cuerpos políticos la oportunidad de investigar los hechos que dan origen a la reclamación; 2—desalentar las reclamaciones infundadas; 3—propiciar un pronto arreglo de las mismas; 4—permitir la inspec[c]ión inmediata del lugar del accidente antes de que ocurran cambios; 5—descubrir el nombre de las personas que tienen conocimiento de los hechos y entrevistarlas mientras su recuerdo es más confiable; 6—advertir a las autoridades municipales de la existencia de la reclamación para que se provea la reserva necesaria en el presupuesto anual; y, 7—mitigar el importe de los daños sufridos mediante oportuna intervención ofreciendo tratamiento médico adecuado y proporcionando facilidades para hospitalizar al perjudicado. *Mangual v. Tribunal Superior*, ante, pág. 494.

■ En *Mangual v. Tribunal Superior*, ante, págs. 498–499, señalamos que: el "requisito de notificación es

una condición previa de cumplimiento estricto ...". No obstante, nuestras decisiones en *García v. Northern Assurance Co.*, ante; *Insurance Co. of P.R. v. Ruiz*, ante; *Díaz v. Municipio de Cayey*, ante, y *Passalacqua v. Mun. de San Juan*, ante, han seguido una "trayectoria liberalizadora" del requisito de notificación al alcalde. Es decir, hemos eximido en *determinadas situaciones* a la parte demandante del requisito de notificar al municipio dentro del término de noventa (90) días. En *López v. Autoridad de Carreteras*, ante, pág. 252, *aclaramos* que dicha trayectoria "*no* ha sido la de dejar sin efecto un requisito que el legislador puertorriqueño claramente ha insistido en que debe cumplirse, *sino la de aplicarlo a los casos en los que propiamente debe aplicarse, sin rigorismos desmedidos*". (Énfasis suplido.)

■ Igualmente, en *Meléndez Gutiérrez v. E.L.A.*, ante, pág. 815, reiterado en *Romero Arroyo v. E.L.A.*, ante, señalamos que en los casos "donde el riesgo de que la prueba objetiva pueda desaparecer es mínimo, donde hay constancia efectiva de la identidad de los testigos y donde el Estado, por tanto, puede fácilmente investigar y corroborar los hechos alegados en la demanda que se radique— no es de aplicación inexorable" el requisito de notificación previa.

Recientemente, en *Méndez et al. v. Alcalde de Aguadilla*, 151 D.P.R. 853 (2000), *se planteó una situación de hechos análoga a la que hoy nos ocupa*. En este caso, dieciséis (16) empleados municipales de carrera reclamaron que el alcalde los despidió ilegalmente debido a discrimen por razones políticas. Éstos demandaron al Municipio de Aguadilla, y a su alcalde, por violación a sus derechos civiles y daños y perjuicios. El Municipio alegó que los demandantes no le habían dado cumplimiento al requisito de notificación establecido en el Art. 15.003 de la Ley de Municipios Autónomos de Puerto Rico, *ante*. Al reiterar la norma jurisprudencial en torno al cumplimiento estricto y la aplicación flexible del requisito de notificación del Art. 15.003 de

la referida ley, *ante*, establecimos que dicho requisito *no* era impedimento que privaba a los allí demandantes de su causa de acción, *ello por dos (2) razones.*

■ Destacamos en *Méndez et al. v. Alcalde de Aguadilla*, ante, *en primer lugar*, que el Alcalde, el mismo funcionario municipal a quien se dirigen las notificaciones de reclamaciones judiciales por daños y perjuicios, alegadamente había provocado los hechos en controversia. Resolvimos que, al conocer el Alcalde, personalmente, los alegados hechos, el Municipio también tenía conocimiento de los mismos, conociendo así la identidad de los testigos y podía "investigar, corroborar o refutar los hechos alegados en la demanda radicada". Íd., pág. 863. *En segundo término*, enfatizamos el hecho de que el Municipio, como consecuencia de la radicación por parte de los empleados de una acción ante JASAP, tenía pleno conocimiento de los hechos alegados por dichos empleados, estando impedido el municipio de demostrar, con éxito, la defensa de estado de indefensión por causa de falta de notificación. En otras palabras, resolvimos que la apelación ante JASAP tenía el mismo efecto de la notificación requerida por la Ley de Municipios Autónomos de Puerto Rico.

En el caso de marras, *situación idéntica* a la de *Méndez et al. v. Alcalde de Aguadilla,* ante, no sólo el alcalde tenía conocimiento personal de los hechos alegados en la demanda sino que los demandantes presentaron su apelación ante JASAP, en la cual reseñaron los mismos hechos que luego reclamaron en la demanda judicial.(³)

Forzoso resulta concluir, *en consecuencia*, que el Municipio fue notificado oportunamente sobre las reclamaciones de los demandantes-peticionarios. *Incidió por tanto, en*

---

(³) Como señalamos en dicho caso: "Indiscutiblemente, como cuestión de hecho, el Municipio de Aguadilla no puede alegar, con éxito, estado de indefensión por causa de la falta de notificación, pues los hechos que motivan esta controversia fueron traídos a la atención investigativa de los demandados prontamente como consecuencia de la tramitación de la reclamación correspondiente ante J.A.S.A.P." *Méndez et al. v. Alcalde de Aguadilla*, 151 D.P.R. 853, 863 (2000).

*cuanto a este aspecto, el Tribunal de Circuito de Apelaciones al resolver que el tribunal de instancia carecía de jurisdicción,* alegadamente por razón de que los demandantes habían incumplido con el requisito de notificación provisto en el Art. 15.003 de la Ley de Municipios Autónomos de Puerto Rico, ante.

Ello nos obliga a entrar a considerar, y resolver, los restantes señalamientos de error que hace la parte demandante peticionaria; señalamientos que *no* consideró, *ni* resolvió el Tribunal de Circuito de Apelaciones.

## II

Los demandantes peticionarios aducen, además, que incidió el tribunal de primera instancia al determinar que se requería agotar el trámite administrativo ya que la causa de acción involucraba violaciones al debido proceso de ley, determinación de instancia, *repetimos*, que el tribunal apelativo intermedio *no* consideró, *ni* resolvió, en la apelación instada. Los empleados sostienen que, debido a la naturaleza de la reclamación, estaban exentos de agotar los recursos administrativos. *Veamos.*

La doctrina de agotamiento de los remedios administrativos requiere que los casos que se inician en el foro administrativo lleguen a su fin en la agencia antes de llegar al foro judicial. Es decir, y conforme esta doctrina, el foro judicial debe abstenerse hasta que concluyan los trámites administrativos. *Guadalupe v. Saldaña, Pres. U.P.R.*, 133 D.P.R. 42, 49 (1993); *Colón v. Méndez, Depto. Recursos Naturales*, 130 D.P.R. 433, 443 (1992); *Mercado Vega v. U.P.R.*, 128 D.P.R. 273 (1991); *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988). Así, la decisión que llega al tribunal refleja la posición final de la entidad administrativa. *E.L.A. v. 12,974.78 Metros Cuadrados*, 90 D.P.R. 506 (1964). Es una manera de balancear los poderes

entre las agencias y los tribunales para así coordinar los esfuerzos entre las mismas. *Ferrer Rodríguez v. Figueroa*, 109 D.P.R. 398 (1980); véanse, además: *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982); *Febres v. Feijóo*, 106 D.P.R. 676 (1978).

■ A. En situaciones, *como la que se plantea en el presente caso*, en las que el foro administrativo *no* está facultado por ley para conceder indemnización por daños y perjuicios, sufridos a causa de una actuación gubernamental, es preciso acudir al foro judicial, *dentro del término prescriptivo*, en reclamo de los daños y perjuicios que el empleado sufre. *Cintrón v. E.L.A.*, 127 D.P.R. 582 (1990); *Igartúa de la Rosa v. A.D.T.*, 147 D.P.R. 318 (1998).

Por ende, y aun cuando la acción comience en la esfera administrativa, si es que se pretende reclamar daños y perjuicios, *la parte debe acudir al foro judicial dentro del término prescriptivo*, quedando la acción judicial *suspendida* hasta que el dictamen administrativo sea final y firme. Véanse: *Delgado Rodríguez v. Nazario de Ferrer*, ante, *Cervecería India, Inc., v. Tribunal Superior*, 103 D.P.R. 686, 691–692 (1975).

■ A esos efectos, en *Cintrón v. E.L.A.*, ante, pág. 595, afirmamos que es aconsejable que, en esos casos, el foro judicial suspenda "la acción judicial hasta tanto el dictamen administrativo advenga final y firme para, además, evitar así la duplicidad de esfuerzos y determinaciones incompatibles o contradictorias entre los distintos foros".

No hay duda, en consecuencia, de que los empleados demandantes *actuaron correctamente* al acudir al foro judicial, en reclamo de los alegados *daños y perjuicios* que supuestamente sufrieron como consecuencia del despido decretado, dentro del término prescriptivo de un (1) año que establece el Art. 1868 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5298. *De no haber así actuado, hubieran perdido su causa de acción por daños y perjuicios.*

■ B. El Art. 12.002 de la Ley de Municipios Autónomos de Puerto Rico, 21 L.P.R.A. sec. 4552, establece que la JASAP "será el organismo apelativo del sistema de administración de personal municipal. *Los procedimientos de reglamentación y adjudicación respecto del personal municipal*, también estarán sujetos a la secs. 2101 et seq. del Título 3, conocidas como 'Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico'". (Énfasis suplido.)

En vista de la designación legislativa contemplada en el referido estatuto, en *Rivera Ortiz v. Mun. de Guaynabo*, 141 D.P.R. 257, 271–272 (1996), *establecimos que JASAP tiene jurisdicción primaria exclusiva para entender en las reclamaciones de empleados municipales relacionados con la administración de personal.* Dicha jurisdicción se extiende desde casos relacionados al sistema de personal a las áreas esenciales del mérito, hasta otras, tales como acciones disciplinarias, beneficios marginales y la jornada de trabajo.[4]

■ Por otro lado, el Art. 12.013 de la Ley de Municipios Autónomos de Puerto Rico, 21 L.P.R.A. sec. 4563, concede a los empleados afectados en una cesantía municipal el derecho de apelar ante JASAP. Dicho artículo dispone, en lo pertinente, que:

> Los empleados de carrera deberán ser notificados, por escrito, de los procedimientos seguidos para decretar las cesantías y de los criterios utilizados. Se les notificará, además, su derecho de apelación ante la Junta de Apelaciones del Sistema de Administración de Personal. Ninguna cesantía será efectiva a menos que se notifique con treinta (30) días de antelación a su efectividad. 21 L.P.R.A. sec. 4563.

El propio texto de la ley establece la jurisdicción apela-

---

[4] No obstante, en el antes mencionado caso, expresamos que las partes que estén inconformes con lo resuelto ante la Junta de Apelaciones del Sistema de Administración de Personal (en adelante JASAP) *pueden acudir en revisión ante el foro judicial.*

tiva de JASAP en torno a las cesantías municipales. *El claro mandato legislativo impone un deber de acudir, en primera instancia, al foro administrativo. JASAP tiene la jurisdicción primaria para atender los reclamos de los empleados cesanteados.* Por lo tanto, el foro judicial deberá abstenerse "para permitir al organismo enjuiciar una materia de su competencia, bajo el supuesto de que éste posee unas destrezas y conocimientos especializados ...". *Delgado Rodríguez v. Nazario de Ferrer,* ante, pág. 354. No obstante, el Poder Judicial conserva la autoridad para intervenir en los momentos que sea necesario para evitar un daño irreparable a una persona. Al tener los tribunales información más precisa sobre los fundamentos de la actuación gubernamental, la revisión judicial se facilita. *Guadalupe v. Saldaña, Pres. U.P.R.,* ante, págs. 49–50.

No hay duda, *en consecuencia,* de que JASAP era el foro adecuado para entender y resolver, en primera instancia, las alegaciones y planteamientos de los empleados cesanteados en el presente caso respecto a si las cesantías de que ellos fueron objeto de parte del Municipio de Aguadilla son, o no, legales y si procede, o no, su reinstalación a los empleos que ocupaban, etc.

■ Como bien señalamos en *Iguartúa de la Rosa v. A.D.T.,* ante, pág. 333, "la presentación de una reclamación por daños en los tribunales no puede ser utilizada como un subterfugio para burlar la obligación de agotar los remedios administrativos ... cuando, inmersa en la reclamación judicial subyacen controversias que requieren ser adjudicadas inicialmente por el foro administrativo".

■ El requisito de agotar los remedios dentro de la jurisdicción primaria de la agencia administrativa *no* se puede preterir para acceder dicha jurisdicción al Tribunal de Primera Instancia, a menos que se cumplan algunas de las *excepciones* que relevan del requerimiento, *cuales son:* (1) que el remedio que provee la agencia sea inadecuado; (2) que se pudiera producir un daño irreparable al promo-

vente y en el balance de los intereses no se justifique agotar los remedios administrativos; (3) que se alegue la violación sustancial de derechos constitucionales; o (4) cuando se trata de un caso claro de falta de jurisdicción de la agencia, entre otras. *Iguartúa de la Rosa v. A.D.T.*, ante, y los casos allí citados. También, la Sec. 4.3 de la Ley de Procedimiento Administrativo Uniforme,([5]) 3 L.P.R.A. sec. 2173, provee una excepción o relevo al agotamiento de los remedios administrativos que contempla las mismas excepciones establecidos jurisprudencialmente.

▬ Cuando se intente reivindicar derechos constitucionales en primera instancia ante el foro judicial, dichos planteamientos se deberán reclamar *antes* de iniciarse el proceso administrativo, a menos que surjan después de ejercitada la jurisdicción administrativa. Si la violación ocurre luego de instado el trámite administrativo, entonces la misma estará sujeta a la revisión judicial, conforme con las Secs. 4.1 y 4.2 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. secs. 2171 y 2172.

"La violación que en realidad contempla la excepción tiene que haber sucedido *con antelación* a que se inicie el proceso administrativo. Es lo que da lugar a que se invoque el procedimiento administrativo." (Énfasis suplido.) D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Colombia, Ed. Forum, 2001, pág. 480.

▬ Desde *First Fed. Savs. v. Asoc. de Condómines*, 114 D.P.R. 426 (1983), hemos expresado que no se margina

---

([5]) "El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa." Sec. 4.3 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2173.

automáticamente el proceso administrativo por invocar lesiones a derechos constitucionales. Igualmente, en *Vélez Ramírez v. Romero Barceló*, ante, reiterado en *Mercado Vega v. U.P.R.*, ante, y *Guadalupe v. Saldaña, Pres. U.P.R.*, ante, sostuvimos que la impugnación constitucional de actuaciones administrativas está sujeta al agotamiento de los remedios administrativos. Es necesario demostrar que el agravio es de *tan grave y patente intensidad*, que se justifica eludir el cauce administrativo, para que proceda un reclamo al amparo de los derechos constitucionales. Véanse, además: *Gracia Ortiz v. Policía de P.R.*, 140 D.P.R. 247 (1996); *Paoli Méndez v. Rodríguez*, 138 D.P.R. 449 (1995); *Rivera v. Depto. de Servicios Sociales*, 132 D.P.R. 240 (1992); *Rivera v. E.L.A.*, 121 D.P.R. 582 (1988); *García Cabán v. U.P.R.*, 120 D.P.R. 167 (1987); *Clemente v. Depto. de la Vivienda*, 114 D.P.R. 763 (1983); *Santiago v. Superintendente de la Policía*, 112 D.P.R. 205 (1982); *Pedraza Rivera v. Collazo Collazo*, 108 D.P.R. 272 (1979); *Pierson Muller I v. Feijóo*, 106 D.P.R. 838 (1978); *Otero Martínez v. Gobernador*, 106 D.P.R. 552 (1977).

Los peticionarios señalan en su alegato que al transcurrir un (1) año sin que JASAP resolviera la apelación u ordenase la restitución a los puestos, ellos optaron por presentar la demanda en el Tribunal de Primera Instancia; pretendiendo, con esa acción, dilucidar en el foro judicial no sólo la reclamación de daños sino que todas sus alegaciones y planteamientos sobre despido injustificado, etc. El hecho de que los remedios administrativos sean lentos no justifica la preterición del requisito de agotamiento. Se requiere que éstos constituyan "una gestión inútil e inefectiva o que produzcan un daño irreparable". (Énfasis suprimido.) *Guadalupe v. Saldaña, Pres. U.P.R.*, ante, pág. 50.

Precisa destacar que los peticionarios no acudieron al foro judicial mediante el recurso de *injunction* para vindicar los derechos constitucionales alegadamente

lesionados. Es el *injunction* el remedio que hemos reconocido, a modo de excepción, para acudir en primera instancia al foro judicial y obviar el proceso administrativo por alegadas violaciones a derechos civiles del empleado. Se solicita cuando el procedimiento ordinario no provee un remedio rápido, adecuado y eficaz frente a un agravio de patente intensidad que reclama urgente reparación. *Gracia Ortiz v. Policía de P.R.*, ante; *Delgado Rodríguez v. Nazario de Ferrer*, ante; *Pedraza Rivera v. Collazo Collazo*, ante; *First Fed. Savs. v. Asociación de Condómines*, ante; *Pierson Muller I v. Feijoó*, ante; *Otero Martínez v. Gobernador*, ante.

■ No obstante, hemos advertido que "la elección del foro judicial por empleados cuya contención propiamente debe dilucidarse en primera instancia por la vía administrativa ante la Junta de Apelaciones, *es práctica nociva que los tribunales deben desalentar y abolir, exigiendo un irrecusable grado de autenticidad y claridad en el planteamiento constitucional al amparo de la Ley de Derechos Civiles ...*". (Énfasis suplido.) Véase, *Pierson Muller I v. Feijoó*, ante, pág. 853.

■ Por otro lado, una vez sometido el caso a la agencia administrativa, y pendiente su adjudicación, el remedio disponible para obligar al foro administrativo que cumpla con su deber ministerial es el *mandamus* ante el Tribunal de Circuito de Apelaciones. *J. Exam. Tec. Méd. v. Elías et al.*, 144 D.P.R. 483 (1997).

El caso de marras *no* contempla situación alguna que pueda encajar en las excepciones estatutarias y jurisprudenciales para preterir los trámites administrativos. Los peticionarios *no* probaron una lesión de tan patente intensidad que permitiera obviar los remedios administrativos disponibles; y, aún así, no utilizaron los recursos extraordinarios que nuestro ordenamiento provee para reivindicar esos derechos constitucionales.

C. Lo anteriormente expresado, sin embargo, *no* dispone

totalmente del caso. Como surge de la relación de hechos, luego de que los empleados radicaran el recurso de apelación ante JASAP —en revisión de las cesantías decretadas por el Municipio— y con posterioridad a haber radicado una demanda ante el foro judicial —en reclamación de los alegados daños y perjuicios sufridos como consecuencia de los despidos— éstos, equivocadamente, pretendieron desistir de la apelación ante JASAP con el propósito de dilucidar todas las controversias ante el foro judicial. El Municipio de Aguadilla, al oponerse, correctamente señaló que, de decretarse dicho desistimiento, el mismo tendría que ser *con* perjuicio.

Increíblemente, y como hemos visto, JASAP emitió una orden, dirigida a los empleados, mediante la cual le concedió un breve término a éstos para que *decidieran* en qué foro, el administrativo o el judicial, querían continuar litigando las controversias planteadas ya que, conforme equivocadamente expuso la referida agencia, dichos empleados no podían litigar en dos foros a la misma vez. Dicho de otra forma, JASAP *no* se percató que las controversias planteadas ante dicha agencia y el foro judicial, a pesar de que tenían elementos en común, eran distintas, como tampoco se percató que dicha agencia *no* tenía la autoridad o facultad para *cederle*, al foro judicial, la solución de las controversias planteadas, relativas a la administración de personal municipal, que por mandato de ley, dicha agencia viene en la obligación de resolver en primera instancia, ello debido, entre otras razones, al "conocimiento especializado" que supuestamente tiene dicha agencia.

 De entrada, debemos dejar claro el hecho de que, conforme nuestro ordenamiento jurídico, la "ignorancia de las leyes no excusa de su cumplimiento".(6) Art. 2 del Código Civil, 31 L.P.R.A. sec. 2. Ello, naturalmente, y en lo pertinente al caso ante nuestra consideración, significa

---

(6) Art. 2 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2.

que los empleados demandantes sabían, o debían saber, que su solicitud de desistir de la apelación, por ellos radicada ante JASAP, sería *con* perjuicio, con las consecuencias jurídicas que ello conlleva.

No obstante, *no* podemos pasar por alto ni ignorar el hecho de que JASAP por medio de la orden que emitiera —concediéndole la "opción" a los empleados de "escoger" el foro ante el cual deseaban litigar sus reclamos de personal— *no* solamente incurrió en un acto *ultra vires*, al ceder su jurisdicción, *sino que* ciertamente indujo a error a dichos empleados.

La cuestión a decidir, entonces, es si la determinación de JASAP de declarar con lugar el desistimiento solicitado— la cual no fue objeto de revisión— es una que obliga a los demandantes, poniéndole fin a sus reclamos sobre despido injustificado, etc., *o*, si la referida determinación es una nula que no tiene efecto jurídico alguno, razón por la cual se tiene por no emitida. La contestación a dicha interrogante, ciertamente, *no* es de fácil solución.

█ En *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64, 130 (1998), este Tribunal expresó, en lo pertinente al caso que hoy ocupa nuestra atención que:

> Al ejercer su función, *el tribunal debe examinar primero si la actuación del organismo administrativo se ajusta al poder que le ha sido delegado, Viajes Gallardo v. Clavell*, 131 D.P.R. 275 (1992); *Hernández Denton v. Quiñones Desdier*, 102 D.P.R. 218, 223–224 (1974), *pues de lo contrario su actuación sería ultra vires y, como consecuencia, nula.* Véanse: *Fuertes y otros v. A.R.P.E.*, 134 D.P.R. 947 (1993); *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 409 (1980); *Del Rey v. J.A.C.L.*, 107 D.P.R. 348, 355 (1978); *E.L.A. v. Rivera*, 88 D.P.R. 196, 199 (1963); *Infante v. Tribunal Examinador Médicos*, 84 D.P.R. 308, 314 n. esc. 5 (1961).

En vista de las claras disposiciones —*y el mandato*— de la Ley de Municipios Autónomos de Puerto Rico que antes reseñamos —a los efectos de que JASAP es el organismo apelativo del sistema de personal municipal, al cual debe-

rán acudir en primera instancia los empleados municipales que hayan sido cesanteados— *no* cabe duda alguna de que la actuación de JASAP en el presente caso, al *ceder* su jurisdicción al foro judicial, *no* se ajustó al poder o autoridad que le fuera delegado por la Asamblea Legislativa de Puerto Rico; razón por la cual su actuación fue *ultra vires* "y, como consecuencia, nula". *Misión Ind. P.R. v. J.P.*, ante.

█ Sabido es que "lo nulo nunca tuvo eficacia alguna, nunca 'nació' en derecho, nunca existió". *Montañez v. Policía de Puerto Rico*, 150 D.P.R. 917, 921 (2000). Dicho de otra forma, las actuaciones nulas *no* producen consecuencias jurídicas. Por ende, la resolución de JASAP, de 14 de agosto de 1998 —mediante la cual ordenó el archivo con perjuicio de la apelación que los empleados demandantes habían radicado ante dicha agencia, actuación realizada con el propósito de *cederle* la jurisdicción al foro judicial sobre los asuntos ante su consideración— nunca existió, razón por la cual nunca tuvo consecuencia jurídica alguna. Dicho recurso de apelación, a todos los fines jurídicos, sigue pendiente, y "vivo", ante JASAP.

### III

En atención a todo lo anteriormente señalado, resulta procedente en derecho dictar sentencia revocatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones, decretándose: (a) la devolución del caso, *al foro administrativo*, con instrucciones a JASAP para que proceda a resolver el recurso de apelación instado ante dicha agencia por los empleados demandantes; y (b) la devolución de la demanda judicial por daños y perjuicios, *al tribunal de instancia*, con instrucciones de que *suspenda* los procedimientos hasta tanto la decisión de JASAP, en el recurso de apelación, advenga final y firme.

*Se dictará sentencia de conformidad.*

El Juez Asociado señor Rivera Pérez disintió con la expresión siguiente: "Entiendo que la determinación de JASAP de declarar con lugar el desistimiento voluntario de los recursos de apelación pendientes ante sí, determinación que no fue objeto de revisión judicial, obligó a los aquí peticionarios y puso fin a sus reclamos de despido injustificado. No comparto la óptica de que la referida determinación es nula, esto es, que no tiene efecto jurídico, razón por la cual se debe considerar como emitida. Los apelantes tenían su representación legal y aún así solicitaron el desistimiento voluntario de su recurso ante JASAP. Esta situación fáctica no amerita la aplicación por este Tribunal de nuestra norma jurisprudencial pautada en *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64 (1998)." El Juez Presidente Señor Andréu García no intervino.

(*Fdo.*) Isabel Llompart Zeno
*Secretaria del Tribunal Supremo*